IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TERRY W. CRUTCHER**,

        Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 6:15-cv-00486-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Terry Wayne Crutcher ("Crutcher") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

1 – OPINION AND ORDER

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Amin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th.Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Charter*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also*20 20 C.F.R. §

416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 416.920(a)(4)(i); 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 416.910; 404.1520. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 416.920(a)(4)(i); 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 416.920(a)(4)(h); 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.921(a); 404.1520(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 416.909; 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 416.920(a)(4)(h); 404.1520(a)(4)(h). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 416.920(a)(4)(iii); 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her

impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv); 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id. See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled as outlined above. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or

4 – OPINION AND ORDER

her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of performing certain types of work after considering the claimant's RFC, age, education, and work experience. *Id.*

## PROCEDURAL AND FACTUAL BACKGROUND

Born in 1968, Crutcher was 43 years old on the disability onset date. Tr. 27. He has a GED. *Id.* He previously worked at a number of temporary jobs, including line cook and server.

Crutcher protectively filed for DIB and SSI on June 21, 2012, alleging disability as of November 16, 2011 due to a seizure disorder, chronic alcohol abuse, anxiety disorder, depressive disorder, and panic disorder. Tr. 20. His application was denied initially and upon reconsideration. Tr. 78-79, 99-100. A hearing was held on April 10, 2014 before an Administrative Law Judge ("ALJ"); Crutcher was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-77. On June 19, 2014, ALJ John Michaelsen issued a decision finding Crutcher not disabled. Tr. 18-28. Crutcher timely requested review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in this Court. Tr. 1-5.

At step one of the sequential evaluation process outlined above, the ALJ found that Crutcher had not engaged in substantial gainful activity after the alleged onset date, November 16, 2011. Tr. 20.

At step two, the ALJ determined Crutcher had the following severe impairments: history of seizure disorder; chronic alcohol abuse; anxiety disorder; depressive disorder; and panic disorder. *Id.*

At step three, the ALJ found that Crutcher's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22. Because Crutcher did not establish disability at step three, the ALJ continued to evaluate how Crutcher's impairments affected his ability to work during the relevant period. The ALJ found Crutcher had the residual functional capacity ("RFC") to perform a full range of functional work at all levels except:

> The claimant must avoid working around unprotected heights, moving machinery, and similar hazards. He is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with co-workers and the general public. Tr. 23.

At step four, the ALJ found that Crutcher did not have past relevant work. Tr. 27.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Crutcher could perform other work existing in significant numbers in the national and local economy despite his impairments, including sweeper/industrial cleaner, hand packager, and mail clerk. Tr. 27-28. Accordingly, the ALJ concluded Crutcher was not disabled under the Act. *Id.*

## DISCUSSION

Crutcher alleges the ALJ erred by improperly assessing: (1) Dr. Alvord's opinion; and (2) the lay witness testimony.

I.    Dr. Alvord's Opinion

*Opinions regarding the ultimate issue of disability are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1);* 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the

6 – OPINION AND ORDER

ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Scott Alvord, a psychologist, examined Crutcher in March 2014 and found him unable to perform his previous jobs, and further found Crutcher would not likely succeed at any occupational level. Tr. 675. Dr. Alvord opined that, for five percent of the day, Crutcher would be precluded from understanding, remembering, and carrying out short, simple instructions, from sustaining an ordinary work routine without special supervision, and from making simple work-related decisions. Tr. 677-78. Dr. Alvord opined that Crutcher would be precluded for five percent of the day from asking questions or requesting assistance, responding appropriately to changes in the work setting, being aware of normal hazards and taking precautions, and setting realistic goals and making plans independent of others. Tr. 678-79. Dr. Alvord opined that, for 15 percent of the day, Crutcher would be precluded from accomplishing the following activities: performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, working in coordination with or in proximity to others, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers. Tr. 677-79.

The ALJ gave little weight to Dr. Alvord's opinion, stating that he significantly relied on the properly discounted subjective symptom complaints of Crutcher, rather than his own

7 – OPINION AND ORDER

objective findings. Tr. 25. Because Dr. Alvord's opinion is contradicted by the opinions of Drs. Roy Brown and Sharon Eder, the ALJ must provide specific and legitimate reasons supported by substantial evidence in order to give little weight to Dr. Alvord's opinion.

A physician opinion derived primarily from the properly discounted subjective symptom testimony of a plaintiff may be given little weight by the ALJ. *Batson*, 359 F.3d at 1195. In support of the finding that Dr. Alvord relied on Crutcher's subjective characterization of his symptoms rather than Dr. Alvord's own observations, the ALJ offered numerous examples from Dr. Alvord's notes which contradict his overall opinion. Tr. 25-26. For example, Crutcher recalled three out of three objects after a five minute delay, successfully performed serial seven subtractions, performed simple mathematical equations, and was able to spell the word "world" forward and backward. Tr. 673. These results contradict Dr. Alvord's assertion that Crutcher would have trouble understanding, remembering, and carrying out short, simple instructions. Tr. 677-78. Dr. Alvord also assessed Crutcher's intellectual functioning in the lower average range, further contradicting his opinion of more severe impairment. Tr. 675.

Dr. Alvord also noted Crutcher appeared on time to the appointment; in his overall diagnosis, Dr. Alvord opined that Crutcher would struggle with punctuality. Tr. 672, 678. Dr. Alvord found he easily established a rapport with Crutcher, in contrast to his opinion that Crutcher would have difficulty interacting and getting along with his co-workers. Tr. 672. In response, Crutcher argues that he "opened up" to Dr. Alvord more than previous evaluators, but has a propensity for "guarded" behavior when discussing past trauma. Tr. 672. However, the record shows that Crutcher discussed traumatic events from his past with other medical professionals. Tr. 653. Such incongruities between Dr. Alvord's opinion and his medical records provide additional support for rejecting his overall analysis of Crutcher's limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

8 – OPINION AND ORDER

Crutcher also argues that the ALJ did not provide any evidence that Dr. Alvord relied more heavily on Crutcher's subjective complaints than his own observations. However, Crutcher appears to have overlooked several key points in the ALJ's decision. The ALJ outlined Dr. Alvord's opinion in one paragraph, describing the various conclusions the doctor came to. Tr. 25. In the following paragraph, the ALJ cited different observations that contradicted Dr. Alvord's overall conclusions. Tr. 25-26. While the ALJ did not explicitly link the two paragraphs together, the ALJ sufficiently established a contrast between what Dr. Alvord observed and his overall conclusions.

Crutcher argues that while the record may not fully reflect Crutcher's subjective symptoms, Dr. Alvord opined that Crutcher presented his symptoms accurately. Dr. Alvord stated that Crutcher "did appear to present his symptoms accurately, [and] validity issues were not suspected." Tr. 672. However, the ALJ decides the accuracy of Crutcher's symptom testimony, not Dr. Alvord. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). The ALJ has access to the entire record, hearing testimony, and lay witness evidence, and is the final arbiter on issues of testimonial evidence.[1] *Id.*

The ALJ also cited evidence of conflict between the record and Dr. Alvord's opinion. Conflicts between a physician's opinion and the plaintiff's activities of daily living are a permissible reason for giving little weight to the opinion. *Tommasetti*, 533 F.3d at 1041. Dr. Alvord opined that Crutcher would struggle performing activities within a schedule, maintaining

---

[1] Furthermore, the ALJ specifically noted that Crutcher did not accurately represent his recent alcohol consumption to Dr. Alvord. Tr. 26. Indeed, Crutcher reported he was consuming "a few beers a couple of times a week;" but mere days later, Crutcher checked into a detoxification facility and reported "he had been consuming four twenty-four ounce beers on a daily basis for the last six months." Tr. 26, 671, 684. While Dr. Alvord noted that Crutcher suffers from alcoholism, his lack of transparency tends to refute Dr. Alvord's contention that there were not any credibility issues as to Crutcher's symptom characterization.

regular attendance, working in coordination with or proximity to others, and getting along with his co-workers. Tr. 677-79. However, Crutcher lived in a rehabilitation facility in which he maintained a strict schedule with regular attendance, lived in a room with three other people, and recorded no difficulties in getting along with the residents of the facility. Tr. 25, 48-53.

Crutcher argues that a highly structured setting reduces the mental demands on an individual, which may minimize the symptoms of his underlying mental disorder. However, the issue here is not whether the facility minimizes his symptoms; instead, it is whether Crutcher was able to function in such a highly regulated environment at all. Dr. Alvord opined that he could not, and Crutcher's presence in the facility directly contradicts his opinion. Crutcher further argues the Court cannot consider his presence in the facility, because the ALJ did not offer it as evidence in the paragraph discussing Dr. Alvord's opinion. However, the ALJ discussed the facility in relation to Crutcher's claims that he has difficulty getting along with others. Tr. 25. This directly relates to Dr. Alvord's opinion and is not impermissible post-hoc evidence.

Finally, the ALJ gave great weight to the opinions of the non-examining physicians, Drs. Brown and Eder, because they were consistent with the evidentiary record as a whole. The opinions of non-examining physicians can "serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Drs. Brown and Eder opined that Crutcher was capable of a full range of work with some restrictions. Tr. 95, 117. The doctors stated that Crutcher had only one documented seizure in recent years, his continued alcohol abuse affected his impairments, and he worked part time and attended classes. *Id.* The ALJ did not err in giving great weight to their opinions.

II.     Third-Party Testimony

Crutcher argues the ALJ failed to articulate legally sufficient reasons for giving little weight to the lay witness testimony of his girlfriend, Jennifer Bissonette. Lay witness evidence is competent and cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014). An ALJ may reject lay witness testimony by giving germane reasons for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Ms. Bissonette first knew Crutcher for six months in 1995 and reencountered him in 2012. Tr. 275. She noted that Crutcher suffered from 10 to 20 seizures per day, even after he stopped drinking. *Id.* She also stated that his anti-seizure medications helped control the seizures but failed to completely halt them; stating that Crutcher occasionally "goes for a few days without a seizure but at no time has been seizure free." *Id.*

The ALJ gave little weight to Ms. Bissonette's testimony because it contradicted her previous statements of record. Inconsistencies with prior recorded statements are an acceptable basis to reject lay witness testimony. *Lewis*, 236 F.3d at 512. In her letter, Ms. Bissonette wrote that Crutcher's anti-seizure medication reduced his seizures somewhat, but he was never seizure free for more than a few days. Tr. 275. However, Ms. Bissonette contemporaneously reported to Dr. Andrew Lockfeld that Crutcher had not suffered a seizure in two weeks after the doctor increased his anti-seizure medication dosage. Tr. 726. Thus, the ALJ reasonably found an inconsistency between Ms. Bissonette's characterization of the length of time between Crutcher's seizures. Tr. 26.

Ms. Bissonette's testimony contradicted Crutcher's own statements elsewhere in the record. Inconsistency between the lay witness testimony and the record is also a germane reason to reject the lay witness testimony. *Bayliss*, 427 F.3d at 1218. Ms. Bissonette stated that

11 – OPINION AND ORDER

Crutcher's heavy drinking did not seem to affect the frequency of his seizures. Tr. 275. However, Crutcher stated that he was 50 days sober during the aforementioned period when he did not suffer any seizures for two weeks. Tr. 726. The ALJ also noted that Crutcher testified that he more frequently suffered seizures when he drank heavily. Tr. 424. The ALJ reasonably concluded that Crutcher's drinking affected his seizures, contrary to Ms. Bissonette's testimony. For these reasons, the ALJ did not err in giving Ms. Bissonette's testimony little weight.

## **CONCLUSION**

For the above reasons I find that the ALJ supported his findings with substantial evidence in the record. Therefore, this Court holds that the ALJ's RFC is free from legal error and the Commissioner's decision denying Crutcher's application for SSI and DIB is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of September, 2016.

          _____/s/ Michael J. McShane_____
              Michael J. McShane
             United States District Judge